UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PATRICIA MILHAVEN,                                    19-cv-02394 (KMK)

            Plaintiff,

    –against–

COUNTRY VILLAGE APARTMENT, d/b/a
CREEKSIDE APARTMENTS,

            Defendant.
------------------------------------------------------------x


**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**


SUSSMAN & ASSOCIATES
*Attorneys for Plaintiff*
1 Railroad Avenue, Ste. 3
P.O. Box 1005
Goshen, NY 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]


Dated: October 24, 2019

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS .................................................................................................2

PROCEDURAL HISTORY................................................................................................3

ARGUMENT .....................................................................................................................3

    Point I

    The law of the case doctrine does not require dismissal of Milhaven's complaint. ............3

    Point II

    The Rooker-Feldman doctrine does divest this Court of subject matter
    jurisdiction over Milhaven's FHA claims alleging Creekside's discriminatory
    non-renewal and termination of her lease. ..........................................................................6

    Point III

    Milhaven's FHA claims are not barred by res judicata because she did not
    have a full and fair opportunity to litigate her discrimination claims in state court. .........19

CONCLUSION..................................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

Aramony v. United Way of America,
254 F.3d 403 (2d Cir. 2001)..........................................................................4

Browning Ave. Realty Corp. v. Rubin,
207 A.D.2d 263 (1st Dep't. 1994) .....................................................................19

Byrd v. Grove St. Mgmt. Corp.,
2018 U.S. Dist. LEXIS 105783 (W.D.N.Y. 2018) ................................................11, 12, 15

Council v. Better Homes Depot, Inc.,
2006 U.S. Dist. LEXIS 57851 (E.D.N.Y. Aug. 16, 2006)................................19

Deraffele v. City of New Rochelle,
2016 U.S. Dist. LEXIS 43466 (S.D.N.Y. Mar. 30, 2016) ................................ 19

DiNapoli v. DiNapoli,
1995 U.S. Dist. LEXIS 13522 (S.D.N.Y. 1995)..........................................17, 18

District of Columbia Court of Appeals v. Feldman,
460 U.S. 462 (1983)........................................................................................7

Dornheim v. Sholes,
430 F.3d 919 (8th Cir. 2005) ...........................................................................19

Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
544 U.S. 280 (2005)..........................................................................6, 7, 8, 15

Federacion de Maestros de P.R. v. Junta de Relaciones del Trabejo de P.R.,
410 F.3d 17 (1st Cir. 2005)...............................................................................19

Guttman v. G.T.S. Khalsa,
446 F.3d 1027 (10th Cir. 2006) ........................................................................19

Hoblock v. Albany County Bd. of Elections,
422 F.3d 77 (2d Cir. 2005)..........................................................6, 8, 9, 10, 12, 15

Kheyn v. City of New York,
2010 U.S. Dist. LEXIS 77708 (E.D.N.Y. 2010)................................................17

Klein v. Gutman,
38 Misc.3d 1211(A) (Sup.Ct., Queens Cnty. Dec. 7, 2012) ............................20

Kristopher v. Stone Street Properties, LLC,
        2013 U.S. Dist. LEXIS 19143 (S.D.N.Y. Jan 29, 2013).................................................5, 18

McKithen v. Brown,
        481 F.3d 89 (2d Cir. 2007)..............................................................8, 9, 10, 13, 15

Morris v. Rosen,
        577 F.App'x. 41 (2d Cir. 2014) ......................................................................17

Nicholson v. Shafe,
        558 F.3d 1266 (11th Cir. 2009) ......................................................................19

O'Brien v City of Syracuse,
        54 N.Y.2d 353 (1981) ...................................................................................19

Phillips v. City of New York,
        453 F.Supp.2d 690 (S.D.N.Y.2006)..................................................................19

Reyes v. Fairfield Properties,
        661 F.Supp.2d 249 (E.D.N.Y. 2009) ............................................................16, 17

Robinson v. Cusack,
        2007 U.S. Dist. LEXIS 50073 (E.D.N.Y. Jul. 11, 2007) ......................................19

Rooker v. Fidelity Trust Co.,
        263 U.S. 413 (1923).......................................................................................7

Schwartzreich v. E.P.C. Carting Co.,
        246 A.D.2d 439 (1st Dep't. 1998) ...................................................................19

Tanasi v. CitiMortgage, Inc.,
        257 F.Supp.3d 232 (D.Conn. 2017)........................................................12, 13, 15

Trang v. Concris Realty Corp.,
        2005 U.S. Dist. LEXIS 44129 (E.D.N.Y. Jun 14, 2005) .................................16, 17

Williams v. Caleroni,
        U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) .................................10, 11, 15

Williams v. Caleroni,
        529 F.App'x. 89 (2d Cir. 2013) ....................................................10, 11, 15

Wolf v. Town of Southampton,
        2013 U.S. Dist. LEXIS 124436 (E.D.N.Y. Aug. 30, 2013)..................................15

**Statutes**

28 U.S.C. § 1331 .................................................................................................17, 18

28 U.S.C. § 1257 ......................................................................................................6

42 U.S.C. 3601 .........................................................................................................1

42 U.S.C. § 3613(a)(1)(A) .......................................................................................18

42 U.S.C. 3613(c) ...................................................................................................15

N.Y. R.P.A.P.L. § 843 ............................................................................................11

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) ............................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................................1

## PRELIMINARY STATEMENT

Plaintiff Patricia Milhaven (hereinafter "Milhaven" or "Plaintiff") respectfully submits this memorandum of law in opposition to defendant Country Village Apartment, d/b/a Creekside Apartments' (hereinafter "Creekside" or "Defendant") motion to dismiss.  Milhaven commenced this action on March 18, 2019, asserting two claims under the Fair Housing Act, 42 U.S.C. 3601, *et seq.* (hereinafter "FHA").   Specifically, she claims that Creekside, which operates the apartment complex in which she lives, refused to renew her lease and terminated her tenancy on account of her disability.  As a result, Creekside sought and obtained a holdover judgment and warrant of eviction against her in state court.   Among other things, Milhaven seeks an order enjoining Creekside to renew her lease upon standard terms and to refrain from harassing and discriminating against her on account of her disability.  She also seeks compensatory damages for the emotional distress Creekside's alleged discrimination caused her.

On its instant motion to dismiss, Creekside does not challenge the facial sufficiency of Milhaven's allegations *vis-à-vis* the merits of her FHA claims.  Rather, it argues only that dismissal is warranted under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by dint of the law of the case doctrine, Rooker-Feldman and *res judicata*.

Since the primary injury about which Milhaven complains – Creekside's alleged discriminatory refusal to renew her lease – was not caused by, and in fact preceded, the state court judgment, and since resolution of her claim that Creekside so acted because of her disability does not invite or require this court to review and reject the state court's judgment, Rooker-Feldman does not deprive this Court of subject matter jurisdiction over her FHA claims. And, since the state court refused to entertain Milhaven's claim that Creekside acted wrongfully, she did not have a full and fair opportunity to litigate these claims in state court, and so *res*

1

*judicata* does not bar her FHA claims here.  As such, Creekside's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Milhaven is sixty years old and resides in a housing development in the Town of Warwick, New York operated by Creekside. <u>See</u> Declaration of David B. Lichtenberg, dated September 26, 2019 ("Lichtenberg Decl."), Exhibit A [Complaint] ¶¶ 1-2.  She has multiple sclerosis, a disabling condition that substantially limits her vision, thinking, energy level and ability to ambulate. <u>See</u> <u>Id.</u> ¶¶ 1, 5.  To assist her, she keeps a service dog named Penny. <u>See</u> <u>Id.</u> at ¶¶ 5-6.

In or about September 2018, claiming that it had received several complaints from others concerning Milhaven's service dog, Creekside refused to renew Milhaven's lease. <u>See</u> <u>Id.</u> ¶¶ 4-5. Between 2016 and 2018, Creekside sent three notices of violation to Milhaven relating to her use of Penny, all which were based on complaints from a single, emotionally disturbed tenant and reflected hostility toward Milhaven on account of her disability. <u>See</u> <u>Id.</u> ¶¶ 6-7.  Specifically, these notices of violation restricted Milhaven's use of her service dog, disallowing her from entering certain common areas like the laundry room. <u>See</u> <u>Id.</u> ¶ 8.  For instance, when Milhaven walks with a cane, she has attached Penny to a leash from her waist; however, the managing agent of the property required her to hold the leash in her hand, which she cannot do while walking with her cane. <u>See</u> <u>Id.</u> ¶ 9.  Relevant ADA regulations allow a service dog not to be unleashed where a person's disability disallows it. <u>See</u> <u>Id.</u> ¶ 10.

Having determined not to renew Milhaven's lease on these discriminatory grounds, Creekside initiated an eviction proceeding in the Town of Warwick Justice Court, though it voluntarily withdrew its initial petition after Milhaven, through counsel, challenged it in October

2018.  <u>See</u> <u>Id.</u> ¶¶ 11-12.   Thereafter, in February 2019, having refused to recertify Milhaven's rental subsidy through the U.S. Department of Agriculture or collect rent from her, Creekside initiated a holdover proceeding in the Town of Warwick Justice Court.  <u>See</u> <u>Id.</u> ¶¶ 13-17.  On the March 12, 2019 return date of Creekside's Petition, the Justice Court held a hearing, though it refused to consider whether Creekside's decision to oust Milhaven was discriminatory, claiming it lacked jurisdiction over any such civil rights claim.  <u>See</u> <u>Id.</u> ¶¶ 18, 20.  The court then entered a holdover judgment and warrant of eviction.  <u>See</u> <u>Id.</u> ¶¶ 18-19; Lichtenberg Decl., Exhibit B.

## PROCEDURAL HISTORY

On March 18, 2019, Milhaven commenced this action and simultaneously filed a proposed order to show cause seeking a TRO and preliminary injunction staying her eviction. <u>See</u> Lichtenberg Decl., Exhibit A; Docket Nos. 1-5.  On March 19, 2019, this Court signed the Order to Show Cause, granting a TRO staying Milhaven's eviction pending resolution of her motion for a preliminary injunction.  <u>See</u> Docket No. 3.  After further briefing on the matter, the Court held a hearing on May 31, 2019, at which it denied Milhaven's application for a preliminary injunction staying her eviction pending resolution of this action.  <u>See</u> Lichtenberg Decl., Exhibit C; Docket No 22.

## ARGUMENT

### <u>Point I</u>

**The law of the case doctrine does not require dismissal of Milhaven's complaint.**

Creekside first argues that Milhaven's entire complaint should be dismissed because, in denying her request for a preliminary injunction staying her eviction during the pendency of this action, this Court "ruled that it lacked subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine, and that if it did have subject matter jurisdiction, Plaintiff's action would be precluded

3

by res judicata." <u>See</u> Def. Mem. at 5.  Thus, it argues that this Court's prior ruling in denying Milhaven a preliminary injunction constitutes the law of the case, requiring dismissal of the entire complaint on those same grounds.  Respectfully, Creekside's argument is unavailing and should be rejected.

As an initial matter, Creekside's argument is wrong as a factual matter because, in denying Milhaven's application for a preliminary injunction, this Court made no ruling based on *res judicata*. <u>See</u> Lichtenberg Decl., Exhibit C [May 31, 2019 Tr.] *passim*.  Rather, the Court's preliminary injunction ruling was based on <u>Rooker-Feldman</u> and, alternatively, the Anti-Injunction Act. <u>See</u> <u>Id.</u> at 28:24-31:11.[1]  As such, there is no prior *res judicata* ruling to serve as law of the case.

Nor should the Court's prior <u>Rooker-Feldman</u> ruling serve as law of the case.  "The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case . . . ."  <u>Aramony v. United Way of America</u>, 254 F.3d 403, 410 (2d Cir. 2001).  The doctrine applies when "prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." <u>Id.</u> Importantly, its application "is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." <u>Id.</u>

Here, this Court's prior <u>Rooker-Feldman</u> ruling dealt only with Milhaven's application for a preliminary injunction.  Its holding – that granting such relief would require it to review and reject the state court eviction judgment – was relevant only to the specific relief Milhaven sought

---

[1] Indeed, in opposing Milhaven's application for a preliminary injunction, Creekside did not raise the issue of *res judicata*, but rather, argued only that (1) <u>Rooker-Feldman</u> and the Anti-Injunction Act prohibited this court from enjoining Milhaven's eviction, and (2) in any event Milhaven failed to establish her entitlement to such relief. <u>See</u> Docket No. 15 [Memorandum of Law in Opposition to Plaintiff's Application for a Preliminary Injunction].  As the issue was not raised, it was not actually litigated or expressly or necessarily resolved by this Court's oral ruling denying Milhaven's preliminary injunction application. <u>See</u> <u>Aramony v. United Way of America</u>, 254 F.3d 403, 410 (2d Cir. 2001).

on that application, namely an injunction staying her eviction pending this action.  That same ruling should not be read to apply to the other forms of relief Milhaven seeks, specifically, an injunction requiring Creekside to issue her a new lease upon standard terms and compensatory damages for the emotional distress Creekside's alleged discriminatory conduct caused her.  As such, the specific issue presented on the instant motion – whether <u>Rooker-Feldman</u> bars Milhaven's FHA claims seeking this additional relief – was not something that was necessarily resolved by the Court's prior preliminary injunction ruling.

Indeed, in one of the cases this Court cited in issuing its prior ruling, <u>Kristopher v. Stone Street Properties, LLC</u>, No. 13-cv-566, 2013 U.S. Dist. LEXIS 19143 (S.D.N.Y. Jan 29, 2013), <u>see</u> Lichtenberg Decl., Exhibit C at 23, although the district court denied the plaintiff's application for a TRO and preliminary injunction on <u>Rooker-Feldman</u> grounds, it allowed her suit to continue with respect to her damages claims. <u>See</u> <u>Id.</u> at *12 ("Because Plaintiff's claims for damages remain, Plaintiff is reminded that . . . she has 120 days from the filing of the Complaint to serve Defendants" with process.).  That same logic should apply here.

Finally, to the extent this court disagrees with this position and finds that the procedural posture of its prior <u>Rooker-Feldman</u> decision does not preclude application of law of the case, for the reasons set forth below in Point II, we respectfully submit that the Court should exercise its discretion to reconsider its prior <u>Rooker-Feldman</u> ruling and hold that the doctrine does not now divest the court of subject matter jurisdiction over Milhaven's FHA claims.

## Point II

**The <u>Rooker-Feldman</u> doctrine does divest this Court of subject matter jurisdiction over Milhaven's FHA claims alleging Creekside's discriminatory non-renewal and termination of her lease.**

Milhaven alleges that, when her lease expired on September 30, 2018, Creekside refused to renew it on account of her disability, in violation of Section 3604 of the FHA.  It was not until months later – in March 2019 – that Creekside succeeded in obtaining a state court judgment and warrant of eviction based on the holdover status it unilaterally created as of October 1, 2018. Since Milhaven's FHA claims existed prior to and are independent of the state court holdover judgment, and since they do not require this Court to review and reject the propriety of that judgment itself, <u>Rooker-Feldman</u> does not apply and this Court has subject matter jurisdiction over her FHA claims.

The <u>Rooker-Feldman</u> doctrine derives from the fact that, under 28 U.S.C. § 1257, only the Supreme Court has federal appellate jurisdiction over final state court judgments, and so federal district courts lack jurisdiction to review such judgments. <u>See</u> <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 283-84 (2005).  In other words, "federal district courts lack jurisdiction over suits that are, in substance appeals from state court judgments." <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 84 (2d Cir. 2005).

Recognizing that it had never applied the <u>Rooker-Feldman</u> doctrine to dismiss an action for want of subject matter jurisdiction in any case other than <u>Rooker</u> and <u>Feldman</u>, <u>see</u> <u>Exxon Mobil</u>, 544 U.S. at 287, and noting the "narrow ground occupied" by the doctrine, <u>see</u> <u>id.</u> at 284, the Supreme Court in <u>Exxon Mobil</u> "pared back the <u>Rooker-Feldman</u> doctrine to its core, holding that it is 'confined to cases of the kind from which the doctrine acquired its name . . . .'" <u>Hoblock</u>, 422 F.3d at 85 (quoting <u>Exon Mobil</u>, 544 U.S. at 284).  Thus, the doctrine applies only

to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.

As the Supreme Court admonished that Rooker-Feldman should be "confined to cases of the kind from which the doctrine acquired its name," see Exxon Mobil, 544 U.S. at 244, a brief review of those two cases is helpful in determining the scope and application of the doctrine.  In Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15 (1923), the federal plaintiff asked the district court to declare a state court judgment "null and void," arguing that the judgment itself was rendered in an unconstitutional manner.  The Supreme Court held that the district court lacked appellate jurisdiction to review and overturn the state court judgment. See Id.   In District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the federal plaintiffs asked the district court to overturn the District of Columbia's highest court's adjudication applying a certain bar admission rule to deny their admittance to the D.C. bar.  The Supreme Court held that the district court lacked subject matter jurisdiction to overturn the D.C. court's adjudication denying their admission, but that it did have subject matter jurisdiction to adjudicate their claims that the bar rule itself was unconstitutional. See Id. at 476-88.

Thus, in both Rooker and Feldman, the federal plaintiffs literally asked the federal district court to review the state court judgment and overturn it.  Such is the essence of appellate review, and since federal district court's do not have appellate jurisdiction to review final state court judgments, they lacked the power to review the state court judgments in those cases.

In restoring the Rooker-Feldman doctrine to its origins, the Exxon Mobil Court provided a few guiding principles for its application.  First, the Court explained that the doctrine does not apply when there is parallel federal and state litigation and "is not triggered simply by the entry

7

of judgment in state court." 544 U.S. at 292.  Nor does "properly invoked concurrent jurisdiction vanish[] if a sate court reaches a judgment on the same or related question while the case remains *sub judice* in federal court." Id.  Second, Rooker-Feldman does not bar an independent claim, even if it involves a matter previously litigated in state court and federal resolution would "den[y] a legal conclusion that a state court has reached in a case to which he was a party." Exxon Mobil, 544 U.S. at 293; Hoblock, 422 F.3d at 87-88.

Two Second Circuit decisions are integral in understanding the scope and application of Rooker-Feldman post-Exxon Mobil – namely, Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) and McKithen v. Brown, 481 F.3d 89 (2d Cir. 2007).  In Hoblock, the Second Circuit distilled Exxon Mobil's holding to "four requirements for the application of Rooker-Feldman." 422 F.3d at 85.  "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth the state court judgment must have been rendered before the district court proceedings commenced." Id. (quotations & citations omitted) (alterations accepted).

Focusing on the second and third factors (*i.e.*, the "substantive factors"), the Hoblock Court explained that "a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman." Id. at 87. Rather, for the doctrine to apply, the injury of which the plaintiff complains in the federal suit must be *caused by* the state court judgment. See Id.  The Hoblock Court succinctly explained how a federal suit could deny a legal conclusion reached by the state court yet still be independent and, thus, preclude application of Rooker-Feldman:

> Suppose a plaintiff sues his employer in state court for violating
> both state anti-discrimination law and Title VII and loses. If the

plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.[2]

Id. at 87-88.

In McKithen, the Second Circuit elaborated further on Rooker-Feldman's substantive requirements. It explained: "What Exxon Mobil and Hoblock do make clear is that the applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion laws), but rather on the *casual relationship* between the state-court judgment and the injury of which the party complains in the federal court." McKithen, 481 F.3d at 97-98 (emphasis in original). The McKithen Court concluded: "[W]hatever the full import of the 'caused by' or 'produced by' language, at least the following is evident: a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." Id. at 98 (emphasis in original)

Applying the foregoing principles here, Rooker-Feldman does not divest this Court of subject matter jurisdiction over Milhaven's FHA claims alleging that Creekside refused to renew her lease on account of her disability. Although Creekside's alleged discriminatory action led to Milhaven's holdover status, which ultimately resulted in the state court judgment, it is clear that its initial discriminatory refusal to renew her lease, which independently injured Milhaven, occurred months *prior* to the state court proceeding and judgment. In other words, Milhaven

---

[2] The Hoblock Court noted that traditional rules of preclusion might apply in such a case. See 422 F.3d at 88 n. 6. But, as explained herein, *res judicata* does not apply in our case.

could have filed this action the day after Creekside refused to renew her lease because she was then injured by Creekside's discriminatory action.

In doing so, Milhaven certainly would not have been complaining about an injury caused by a state court judgment because no judgment had yet been issued and, in fact, the injury was caused by Creekside's conduct.  The fact that she has brought this same exact claim after the state court entered its judgment does not alter the fact that she was injured by Creekside's independent conduct and that her claim existed prior to the state court judgment.  As such, in seeking redress for Creekside's alleged discriminatory conduct in September 2018, Milhaven is not inviting this Court to review and reject the Town of Warwick Justice Court's March 14, 2019 judgment, which "simply ratified, acquiesced in, or left unpunished" Milhaven's preexisting injury. See McKithen, 481 F.3d at 98 (quoting Hoblock, 422 F.3d at 88).

Several district court cases from this Circuit support Milhaven's argument here.  For instance, in Williams v. Caleroni, No. 11-cv-3020 (CM), 2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012), aff'd., 529 F.App'x. 89 (2d Cir. 2013) (summary order), Judge McMahon refused to apply Rooker-Feldman to preclude a plaintiff from litigating FHA discrimination claims, even though a state court had ordered his eviction.  The Court reasoned:

> [I] conclude that Williams has pleaded enough of a discrimination claim to preclude dismissal under Rooker-Feldman. The "strongest arguments that his claims suggest" are not that the Housing Court Decision was simply wrong, but rather that the Defendants sought and obtained the judgment of eviction out of racial animus. Williams' claims can be construed to say that, although he did not pay rent and was thus subject to eviction, the receiver would not have pursued eviction against non-paying white tenants. . . .  Thus, Plaintiff might be arguing, he was "singled out because of his race," . . .  and he "was subject to racial and housing discrimination at least in part, because of discriminatory animus" . . . .  The fact that Williams seeks damages for discrimination under 42 U.S.C. §§ 1981 and 3604 . . . tends to confirm this supposition, even if the

> text of the pleading seems more like an attack on the state court judgment.
>
> For purposes of a motion to dismiss for lack of subject matter jurisdiction (rather than Rule 12(b)(6)), these are distinct claims, arising under federal statutes, and do not invite the federal court to review . . . .   Accordingly, I will not dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Id. at *14-*15 (citations omitted) (alterations accepted).  The Second Circuit affirmed Judge McMahon's Rooker-Feldman ruling: "As an initial matter, the district court properly exercised jurisdiction and declined to dismiss the Appellant's suit based on the Rooker-Feldman doctrine." Williams, 529 F.App'x. at 89.

Likewise, here, Milhaven alleges that Creekside would not have refused to renew her lease and sought to evict her but for its discriminatory animus.  Although Creekside's conduct ultimately created the circumstances that led to the state court judgment/eviction, like in Williams, she does not argue here that the Town Court was wrong, but rather asserts an independent claim of discrimination that does not invite review of the judgment/eviction itself.

Similarly, in Byrd v. Grove St. Mgmt. Corp., No. 16-cv-6017, 2018 U.S. Dist. LEXIS 105783 (W.D.N.Y. 2018), Judge Telesca refused to find that Rooker-Feldman deprived the Court of jurisdiction over the plaintiff's FHA claims, which, like here, alleged a discriminatory failure to renew a lease, which ultimately led to the plaintiff's eviction.  Although the district court held that Rooker-Feldman applied to plaintiff's state-law unlawful eviction claim under N.Y. R.P.A.P.L. § 843[3] because that claim asked it to review and overturn the state court eviction, it concluded that the plaintiff's FHA claims were different:

---

[3] This statute reads: "If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer." N.Y. R.P.A.P.L. § 843.

The Court next turns to Plaintiff's claims that Defendants acted with intent to discriminate on the bases of her race and disability in denying her request to renew her lease. The Court has construed these claims as arising under Sections 3604(a), 3604(b), and 3604(f)(1)(A) of the FHA. Relatedly, Plaintiff claims that Defendants denied her request to renew her lease to retaliate against her for a previous, successful assertion of her fair housing rights; the Court construes this claim as arising under Section 3617. Here, the injury about which Plaintiff complains is the denial of the request to renew her lease. While the state court judgment of eviction was a consequence of Defendants' denial of the request to renew her lease, it cannot be said that Defendants' failure to renew the lease was "caused by" the state court judgment of eviction. Rather, Defendants' challenged actions—the refusal to renew the lease—were "simply ratified, acquiesced in, or left unpunished by [the state court judgment]." Hoblock, 422 F.3d at 88. Therefore, the Court finds that these claims are not subject to Rooker-Feldman.

The Court next examines Plaintiff's claims that Defendants commenced the summary eviction proceeding to retaliate against her for exercising her rights, and to discriminate against her. The Court has construed them as arising under Section 3617 and Section 3604(a), respectively. The injuries of which Plaintiff complains—retaliation and discrimination culminating in the filing of a petition to regain possession of the apartment and evict her—occurred prior to the actual judgment of eviction. Therefore, the Court finds that Rooker-Feldman does not apply.

Id. at *16-*17.

Byrd is directly on point with our case.  Like the plaintiff there, Milhaven's FHA claims under Section 3604 allege that Creekside refused to renew her lease in a discriminatory manner, i.e., on account of her disability.  And, although the state court judgment here was the "consequence" of Creekside's alleged discriminatory action, its non-renewal of her lease was not "caused by" the later state court judgment.

In another district court case involving a foreclosure, the District Court for the District of Connecticut in Tanasi v. CitiMortgage, Inc., 257 F.Supp.3d 232 (D.Conn. 2017) refused to apply Rooker-Feldman to bar litigation of independent claims relating to the foreclosure action but

independent of the foreclosure judgment itself.  There, after losing in a state foreclosure action, the plaintiffs commenced a federal action asserting claims under the Real Estate Settlement and Procedures Act of 1974 ("RESPA"), the Connecticut Unfair Trade Practices Act ("CUTPA") and for negligence.  See Id. at 251-52.  The plaintiffs claimed that the mortgagee, CitMortgage, was negligent and violated RESPA and CUTPA by mishandling plaintiffs' loss mitigation applications and mortgage modification requests and by misleading them about their loss mitigation polices.  See Id.

Although the foregoing alleged misconduct ultimately contributed to the circumstances leading to the entry of the foreclosure judgment against the plaintiffs, the district court held that Rooker-Feldman did not divest it of subject matter jurisdiction to hear these claims.  See Id. at 252-55.  It noted that, in asserting these claims, the plaintiffs were not "arguing that the foreclosure was wrongly decided or seeking injunctive relief against the foreclosure," but rather "that CitiMortgage committed independent violations . . . which grant [them] independent rights as consumers and borrowers."  Id. at 253.  Explaining why the plaintiff's claims were not "caused by" the state foreclosure judgment, the district court emphasized the rule from McKithen, that a claim does not complain of an injury caused by a state court judgment "when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings . . . ."  Id. at 254 (quoting McKithen, 481 F.3d at 98).  It reasoned as follows:

> The [plaintiffs] complain of injuries allegedly caused by CitiMortgage's improper servicing of their mortgage.  While these errors may have shaped the eventual Foreclosure Action, they were not produced by the state-court judgment. . . .  At most, they were simply ratified, acquiesced in, or left unpunished by it . . . in that the state court allowed CitiMortgage to foreclose despite its alleged violations.

Id. (quotations & citations omitted).

13

Again, here, although Creekside's allegedly discriminatory decision not to renew Milhaven's lease and to seek her ouster "shaped" the eventual eviction proceeding, Milhaven's injury resulted from Creekside's independent conduct – the non-renewal of her subsidized housing – and, thus, was not "produced by" the later Town of Warwick Justice Court judgment.

In arguing that <u>Rooker-Feldman</u> applies here, Creekside contends that Milhaven seeks exactly what <u>Rooker-Feldman</u> prohibits – "to undue her state-court ordered eviction." <u>See</u> Def. Mem. at 6. But that is not accurate. To be sure, when she initially commenced this action, part of the relief Milhaven sought was an order enjoining her eviction. And this Court has already ruled that <u>Rooker-Feldman</u> prohibits it from granting such relief. But that is not all the relief she seeks. She also seeks an order enjoining Creekside to renew he lease on standard terms and to refrain from harassing/discriminating against her on account of her disability. <u>See</u> Lichtenberg Decl., Ex. A at 5 [Prayer for Relief]. And she seeks compensatory damages for the emotional distress she alleges Creekside's conduct caused her. <u>See</u> <u>Id.</u>

Ordering such relief would not "undue" the state court judgment/eviction. Certainly, an award of compensatory damages to redress alleged discriminatory conduct causing emotional distress occurring prior to the judgment would not undue that judgment. And even an injunction requiring Creekside to renew Milhaven's lease would not frustrate the state court eviction judgment. This is because such relief could be ordered even if Creekside ultimately executed the eviction and ousted Milhaven from her unit.[4] In such an instance, Creekside would have realized all the benefits of the state court judgment, and the fact that it would then have to re-lease a unit to Milhaven going forward would simply be reflective of the prospective injunctive relief necessary to remedy its discriminatory refusal to renew Milhaven's lease in the first instance.

---

[4] Milhaven's eviction is presently being stayed by order of the New York State Supreme Court, Appellate Term for the 9th and 10th judicial districts.

Even if this ultimate *result* might be somewhat at odds with the eviction itself, such would not implicate Rooker-Feldman's bar. See Hoblock, 422 F.3d at 87 ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman."); Exxon Mobil, 544 U.S. at 293 (holding Rooker-Feldman does not bar an independent claim, even if it involves a matter previously litigated in state court and federal resolution would "den[y] a legal conclusion that a state court has reached in a case to which he was a party.").

In other words, Milhaven does not ask for relief that would require this Court to review the propriety of the state court's judgment and overturn it.  She simply seeks relief – both injunctive and monetary – which this Court is empowered to award to remedy Creekside's alleged discriminatory behavior. See 42 U.S.C. 3613(c).

In support of its argument for application of Rooker-Feldman here, Creekside also cites a litany of cases it contends supports its position. See Def. Mem. at 6-8.  Respectfully, we submit that these cases are either distinguishable or in conflict with the principles set forth in Exxon Mobil, Hoblock and McKithen and with the holdings of Williams, Byrd and Tanasi, *supra*.

For instance, in Wolf v. Town of Southampton, No. 12-cv-05166, 2013 U.S. Dist. LEXIS 124436 (E.D.N.Y. Aug. 30, 2013), the federal plaintiff did not allege that his landlord engaged in actionable discriminatory conduct prior to commencing the eviction proceeding.  Rather, through a pro se complaint, she claimed that she was "injured by the fact that the Southampton Town Court, *inter alia*, facilitated a RICO enterprise against her . . . , created law . . . , and suspended her constitutional freedoms." Id. at *4-*5.  As such, the plaintiff was directly challenging the state court proceeding and the eviction judgement itself and not some earlier, independent misconduct. See Id. at *11-*12.  By contrast, here, as already discussed, Milhaven does not

15

challenge the local court proceeding or its judgment, but rather Creekside's prior discrimination. Thus, <u>Wolf</u> does not avail Creekside here.

In <u>Reyes v. Fairfield Properties</u>, 661 F.Supp.2d 249 (E.D.N.Y. 2009), although the district court applied <u>Rooker-Feldman</u> to bar the plaintiff's unlawful eviction claim, it held that the plaintiff's breach of contract and breach of the implied duty of good faith and fair dealing clams, because they "rely on the factual allegations of discrimination and retaliation based on discrimination that also support the FHAA and NYSHRL claims," did not seek to review the state court warrant of eviction and, thus, were not barred by <u>Rooker-Feldman</u>. <u>See</u> <u>Id.</u> at 274-75. The Court explained:

> Again, whether the eviction proceedings were based on a retaliatory or non-retaliatory motive is unresolvable on a motion to dismiss, and the purported validity of Reyes' status as a holdover tenant is not dispositive of that question. The Court will not review the validity of the warrant of eviction, but to the extent that the rest of plaintiffs' claims do not hinge on a review thereof, they are not barred from consideration by the Court. Indeed, there is no indication of a final judgment in the eviction proceedings regarding any discrimination or retaliation claims, or the breach claims. There is also no indication that such issues were litigated or argued, or that they played a part in the state court's determination to issue the warrant of eviction, as discussed in more detail infra. The only claim in the amended federal court complaint, alleging injury flowing from the state court judgment issuing the warrant of eviction, is the unlawful eviction claim. Thus, at this juncture, the Court cannot determine that any other claims are also barred by <u>Rooker-Feldman</u> and thus outside this Court's jurisdiction.

<u>Id.</u> at 275.  Thus, not only does <u>Reyes</u> not avail Creekside, it actually supports Milhaven.

Nor is <u>Trang v. Concris Realty Corp.</u>, No. 05-cv-5441, 2005 U.S. Dist. LEXIS 44129 (E.D.N.Y. Jun 14, 2005) helpful to Creekside.  As an initial matter, although it was decided about three months after <u>Exxon Mobil</u> and cited that case, <u>Trang</u> was decided before the Second Circuit's decisions in <u>Hoblock</u> and <u>McKithen</u>, and thus lacks the guidance set forth in those

decisions.  Further, in issuing its alternative ruling dismissing the complaint for failure to state a claim, the district court noted that the plaintiff's complaint is devoid of allegations sufficient to establish discriminatory conduct by the landlord. See Id. at *7.  Finally, it is noteworthy that, in declining to apply Rooker-Feldman as to some of plaintiff's claims, the court in Reyes, which Creekside has relied on, distinguished Trang on the ground that a full trial was had on the issue of discrimination in the housing court, where no such state court adjudication occurred in Reyes. See Reyes, 661 F.Supp.2d at 275 n. 16.  Likewise, here, there was no adjudication of Milhaven's discrimination claim in the local justice court.

In Morris v. Rosen, 577 F.App'x. 41 (2d Cir. 2014) (summary order), the plaintiff "alleged due process violations in her eviction."  The Second Circuit held that Rooker-Feldman applied, in part, because plaintiff's claim "invited review of the state court judgment because her claim – that her due process rights were violated when she was evited from her Rochdale apartment – was expressly rejected by the state court . . . ." Id. at 42-43.  By contrast, here, Milhaven does not allege due process violations arising from her eviction proceeding, but rather claims of discrimination under the FHA, which arose prior to the eviction proceeding.

Neither Kheyn v. City of New York, Nos. 10-cv-3233, 10-cv-3234, 2010 U.S. Dist. LEXIS 77708 (E.D.N.Y. 2010) nor DiNapoli v. DiNapoli, No. 95-cv-7872, 1995 U.S. Dist. LEXIS 13522 (S.D.N.Y. 1995), which Creekside cites, apply here.  In Kheyn, landlords sued the City of New York, the Brooklyn DA's Office and the Housing Court, alleging that the housing court judge "was dragging this case for so long" and that "a bribe was given by respondent attorney to the supervising judge." 2010 U.S. Dist. LEXIS 77708at 1-2.  The district court did not apply Rooker-Feldman, but simply held that the claims did not raise a substantial federal question under 28 U.S.C. § 1331. See Id. at 3-5.  Likewise, in DiNapoli, the district court did not

apply Rooker-Feldman, but rather simply held that the plaintiff failed to raise a substantial federal question under 28 U.S.C. § 1331. See 1995 U.S. Dist. LEXIS 13522 at *3-*4.

Here, it is plain that Milhaven's claims under the FHA raise a federal question sufficient to invoke this Court's jurisdiction, not only under Section 1331, but also under the FHA's jurisdictional provision, 42 U.S.C. § 3613(a)(1)(A).  And, again, Milhaven is does not complain about the eviction proceeding or judgment, as did the plaintiffs in Kheyn and DiNapoli, but rather Creekside's allegedly discriminatory conduct.

As it has throughout this proceeding, Creekside again relies also on Kristopher v. Stone Street Properties, LLC, No. 13-cv-566, 2013 U.S. Dist. LEXIS 19143 (S.D.N.Y. Jan 29, 2013). But there, the court was deciding only the plaintiff's motion for TRO and preliminary injunction, holding that awarding such relief would require it to review and reject the state court eviction judgment.  It is not clear if, like here, the plaintiff in Kristopher sought different injunction relief. And, notably, the district court allowed the plaintiff's suit to continue with respect to her damages claims.  See Id. at *12 ("Because Plaintiff's claims for damages remain, Plaintiff is reminded that . . . she has 120 days from the filing of the Complaint to serve Defendants" with process.).

In sum, Milhaven's FHA claims against Creekside for its alleged discriminatory refusal to renew her lease are independent from and were not caused by the state court judgment/eviction.  In fact, these claims existed prior in time to the state court proceeding and awarding Milhaven the relief she seeks as a remedy for Creekside's alleged judgment/eviction itself.  As such, Rooker-Feldman does not divest this Court of subject matter jurisdiction over these claims.[5]

---

[5] In addition to the argument, set forth at length herein, that Rooker-Feldman's substantive requirements are not met, we also submit that one of its procedural prongs has not been met because the state court proceeding here is still

**Point III**

**Milhaven's FHA claims are not barred by *res judicata* because she did not have a full and fair opportunity to litigate her discrimination claims in state court.**

Creekside contends that Milhaven's FHA claims are barred by the doctrine of *res judicata* because she could have raised them as a defense in the state court eviction proceeding. See Def. Mem. at 9-12.  Respectfully, this argument is unavailing and should be rejected.

Under New York's *res judicata* doctrine, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." O'Brien v City of Syracuse, 54 N.Y.2d 353, 357 (1981).  But the doctrine applies only if the party against whom it is being invoked had a full and fair opportunity to litigate the claim in the prior proceeding. See Browning Ave. Realty Corp. v. Rubin, 207 A.D.2d 263, 264-65 (1st Dep't. 1994) ("The previous disposition must have been on the merits and the party opposing preclusion must have had a full and fair opportunity to litigate this claim in the prior proceeding."); Schwartzreich v. E.P.C. Carting Co., 246 A.D.2d 439, 441 (1st Dep't. 1998).

---

pending on appeal.    As this Court has noted before, several Circuit Courts of Appeals "have found the Rooker-Feldman doctrine inapplicable unless all state proceedings – including appeals – have ended before the federal action commences." See Deraffele v. City of New Rochelle, No. 15-cv-282, 2016 U.S. Dist. LEXIS 43466, at *20 n. 10 (S.D.N.Y. Mar. 30, 2016) (Karas, J.) (citing Nicholson v. Shafe, 558 F.3d 1266, 1276 (11th Cir. 2009); Guttman v. G.T.S. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006); Dornheim v. Sholes, 430 F.3d 919, 923-24 (8th Cir. 2005). In addition to the cases this court cited in Deraffele, the First Circuit has also interpreted Rooker-Feldman in this manner. See Federacion de Maestros de P.R. v. Junta de Relaciones del Trabejo de P.R., 410 F.3d 17, 24-29 (1st Cir. 2005).  The Second Circuit has not yet opined on this issue, see Deraffele, 2016 U.S. Dist. LEXIS 43466 at *20 n. 10, and, as it is an open question, this Court has disagreed with the other Circuits' interpretations and, instead, adopted the reasoning of other district courts in this Circuit that waiting until all appeals are exhausted would undermine the policy and purpose underlying Rooker-Feldman. See Id. (citing cases).  Respectfully, we submit that the Court should reconsider this question.  Although some district courts in this Circuit have ruled in the manner this Court has adopted, others have ruled the other way. See Robinson v. Cusack, No. 05-cv-5318, 2007 U.S. Dist. LEXIS 50073, at *16-*19 (E.D.N.Y. Jul. 11, 2007); Phillips v. City of New York, 453 F.Supp.2d 690, 713-15 (S.D.N.Y.2006); Council v. Better Homes Depot, Inc., No. 04-cv-5620, 2006 U.S. Dist. LEXIS 57851, at *24-25 (E.D.N.Y. Aug. 16, 2006).  Indeed, Exxon Mobil's admonished that the doctrine should be applied only in cases such as Rooker and Feldman themselves and, in both such cases, the plaintiffs commenced their actions in federal district court after all state proceedings had ended.  In light of this guidance from the Supreme Court, the decisions of the First, Eighth, Tenth and Eleventh Circuits and of the aforementioned district courts in this Circuit, we respectfully submit that the Rooker-Feldman should not apply if an appeal of the state court judgment is pending.

Here, the Town of Justice Warwick Court claimed it lacked jurisdiction over civil rights claims and refused to allow Milhaven to assert her discrimination claim as a defense to the holdover proceeding.  As such, Milhaven lacked a full and fair opportunity to litigate these issues in state court and, thus, *res judicata* does not apply.

In this regard, Kings County Supreme Court's decision in <u>Klein v. Gutman</u>, 38 Misc.3d 1211(A), 2012 N.Y. Misc. LEXIS 5982 (Sup.Ct., Queens Cnty. Dec. 7, 2012), is instructive.  In refusing to apply *res judicata* to bar the plaintiff from asserting a claim he may have been able to assert as a counterclaim in a federal court action against the same defendant, the court noted that the plaintiff was prohibited from bringing such a counterclaim in the earlier action because of stay stipulation prohibiting it. <u>See</u> 2012 N.Y. Misc. 5982 at \*\*\*18-\*\*\*19.  It explained:

> Due to this stay, Klein could not then plead the claims now raised in this action as a counterclaim in the Federal Action. Klein claims that he moved on multiple occasions to lift the stay, but his motions were denied by the Federal Court, preventing him from filing counterclaims, and, as noted above, Judge Cogan first ruled that the Klein defendants could seek to revive their pending state court claims in state court if the state court allowed such relief on July 21, 2010. *Thus, the Federal Court, in effect, refused to entertain Klein's counterclaims, denying him a full and fair opportunity to place them squarely before that court . . . .* Consequently, Klein cannot be foreclosed by the doctrine of res judicata from maintaining the present action since the claims asserted in the present complaint were never actually litigated and could not have been litigated in the prior Federal Action.

<u>Id.</u> at \*\*\*19 (citations omitted) (emphasis added).  Likewise, here, because the Town Court refused to entertain Milhaven's defense, she lacked a full and fair opportunity to litigate and *res judicata* should not preclude her FHA claims here.

**CONCLUSION**

For all of the foregoing reasons, Creekside's motion to dismiss should be denied in its entirety and the matter should proceed with discovery.

Dated: Goshen, New York
October 24, 2019                    Respectfully submitted,

                                   SUSSMAN AND ASSOCIATES
                                   *Attorneys for Plaintiff*


                                   By: ____/s/ Jonathan R. Goldman_____
                                       Jonathan R. Goldman, Esq. (JG8710)
                                       1 Railroad Avenue, Ste. 3
                                       P.O. Box 1005
                                       Goshen, New York 10924
                                       (845) 294-3991 [Tel]
                                       (845) 294-1623 [Fax]
                                       jgoldman_sussman1@frontier.com


TO:    David B. Lichtenberg, Esq.
       FISHER & PHILLIPS, LLP
       *Attorneys for Defendant*
       430 Mountain Avenue, Suite 303
       Murry Hill, New Jersey 07974
       (908) 516-1050 [Tel]
       (908) 516-1051 [Fax]
       dlichtenberg@fisherphillips.com