UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA MILHAVEN,

                              Plaintiff,

        v.

COUNTRY VILLAGE APARTMENT
D/B/A CREEKSIDE APARTMENTS,

                              Defendant.

No. 19-CV-2384 (KMK)

OPINION & ORDER

APPEARANCES:

Michael H. Sussman, Esq.
Jonathan R. Goldman, Esq.
Sussman & Associates
Goshen, NY
*Counsel for Plaintiff*

David B. Lichtenberg, Esq.
Fisher & Philips, LLP (NJ)
Murray Hill, NJ
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Patricia Milhaven ("Plaintiff") brings this Action against Country Village

Apartment, d/b/a Creekside Apartments ("Defendant"), pursuant to the Fair Housing Act (the

"FHA"), 42 U.S.C. § 3604, *et seq.*, alleging that her apartment lease was terminated in violation

of the FHA.  (*See* Compl. (Dkt. No. 1).)  Before the Court is Defendant's Motion To Dismiss,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (*See* Not. of

Mot. (Dkt. No. 30).)  For the reasons to follow, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

Plaintiff is a 60 year old disabled person who suffers from multiple sclerosis, which "substantially limits [her] ability to ambulate, her vision, thinking, and energy level." (Compl. ¶¶ 1, 7.)  Plaintiff resides in a unit in a housing development operated by Defendant that is located in Warwick, New York, and is "specifically intended for the disabled and elderly." (*Id.* ¶¶ 1–2.)  The housing development consists of approximately 70 units, and Plaintiff's rent is subsidized through payment from the United States Department of Agriculture ("USDA"). (*Id.* ¶¶ 2, 13.)  Plaintiff lives with her service dog, Penny, for whom she pays an additional $250 in rent annually. (*Id.* ¶¶ 5–6.)  Plaintiff also receives food stamps "and other forms of public subsidy." (*Id.* ¶ 22.)

From 2016 through 2018, Defendant sent Plaintiff three notices of violation related to the use of her service dog. (*Id.* ¶ 6.)  According to Plaintiff, these notices were based on "frivolous" complaints by "a single[,] admittedly emotionally disturbed tenant." (*Id.* ¶ 7.)  Specifically, the notices restricted Plaintiff and her dog from entering common areas, such as the laundry room. (*Id.* ¶ 8.)  The managing agent of the housing development also required Plaintiff to hold the dog's leash in her hand, which she is unable to do when she walks with a cane. (*Id.* ¶ 9.)  Instead, due to her disability, when Plaintiff walks with a cane, she attaches her dog to a leash from her waist. (*Id.*)  Plaintiff asserts that "[r]elevant ADA regulations allow a service dog not to be leashed where a person's disability disallows the same." (*Id.* ¶ 10.)

In September 2018, Defendant refused to renew Plaintiff's lease, citing complaints it had received about Plaintiff's service dog. (*Id.* ¶¶ 4–5.)  Thereafter, Defendant brought an eviction proceeding in local court in the Town of Warwick. (*Id.* ¶ 11.)  After Plaintiff challenged the

eviction, it was voluntarily withdrawn by Defendant in October 2018.  (*Id.* ¶ 12.)  Although Defendant is able to access rental payments from the USDA "without [P]laintiff's assent or assistance," Defendant has refused to do so since October 2018.  (*Id.* ¶¶ 14–16.)  Thus, in February 2019, Defendant initiated a holdover proceeding in the Town of Warwick Justice Court.  (*Id.* ¶17.)  On March 12, 2019, the Town Justice Court issued a verbal order allowing for Plaintiff's eviction from her home, and requiring Plaintiff to pay two months' rent, from February 1, 2019 through March 31, 2019, which "exceed[ed] $1[,]350" (the "Judgment").  (*Id.* ¶¶ 18–19; *see also* Decl. of David B. Lichtenberg, Esq. in Supp. of Mot. ("Lichtenberg Decl.") Ex. B ("Holdover Judgment") (Dkt. No. 32-1).)[1, 2]  Plaintiff alleges that the court refused to consider whether the eviction constituted disability discrimination, "claiming that it lacked jurisdiction over any such civil rights claim."  (Compl. ¶ 20.)

On June 30, 2020, Plaintiff informed the Court that on June 18, 2018, the Judgment was reversed and remitted for trial by the Appellate Term for the 9th and 10th Judicial Districts of the New York State Supreme Court, Appellate Division, Second Department.  (Letter from Jonathan R. Goldman, Esq. to Court (June 30, 2020) ("Goldman June 30 Letter") 1 (Dkt. No. 35); *see also id.* Ex. A ("Appellate Term Order") (Dkt. No. 35-1).)  The court found that "[i]nasmuch as [Plaintiff's] tenancy is governed by the rules of the [USDA] Rural Development Program, [Defendant] was required, in this holdover proceeding, to establish that its refusal to renew

---

[1] The Court may take judicial notice of state court orders.  *See Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of matters of public record, including pleadings, testimony, and decisions in prior state court adjudications, on a motion pursuant to Rule 12(b)(6)." (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000))).

[2] The court appears to have ordered Plaintiff to pay to Defendant $1,336.  (Holdover Judgment 1.)

[Plaintiff's] lease was based on [Plaintiff's] material non-compliance with the lease provisions, material non-compliance with the occupancy rules, or other good causes." (*Id.* at 2 (citations and quotation marks omitted).) Accordingly, the court remitted the matter to the Town of Warwick Justice Court for trial. (*Id.*)

Plaintiff alleges that Defendant has caused her "severe emotional distress." (Compl. ¶ 23.) She seeks injunctive relief prohibiting Defendant from evicting her and enjoining "any harassment against [P]laintiff on the basis of her disability"; an order requiring Defendant to renew her lease "on standard terms"; and "reasonable compensatory damages" and attorneys' fees and costs. (*Id.* at 5.)

B.  Procedural Background

Plaintiff filed her Complaint on March 18, 2019. (*See generally* Compl.) On March 19, 2019, the Court issued an Order To Show Cause, granting a temporary restraining order that would enjoin Defendant from evicting Plaintiff pending resolution of a Motion for a Preliminary Injunction filed by Plaintiff. (Dkt. No. 3.)[3] On May 31, 2019, after the Parties filed supplemental materials related to Plaintiff's Motion for a Preliminary Injunction, (Dkt. Nos. 5–8, 15, 18–20), the Court held oral argument and denied Plaintiff's Motion, finding that "when state-court losers bring . . . [disability and discrimination] claims [seeking to enjoin evictions] in federal court, they have been consistently barred under the *Rooker-Feldman* doctrine or under res

---

[3] On March 28, 2019, the Office of Fair Housing and Equal Opportunity of the United States Department of Housing and Urban Development ("HUD") filed a request that the Court stay proceedings pending the outcome of an investigation into a disability discrimination claim filed by Plaintiff against Defendant and Michael Murdock. (Dkt. No. 12.) As ordered by the Court, (*id.*), the Parties filed responses to this request on April 3 and 9, 2019, (Dkt. No. 13, 16). On April 10, 2019, the Court directed HUD to respond to Defendant's letter on the requested stay by April 17, 2019. (Dkt. No. 17.) It appears that HUD never filed a response. (*See generally* Dkt.)

judicata." (Lichtenberg Decl. Ex. C ("Tr."), at 26 (Dkt. No. 32-3); Dkt. (minute entry for May 31, 2019); Dkt. No. 22.)  The Court further found that if it considered the state court proceedings to be ongoing, the Anti-Injunction Act would bar the requested preliminary injunction.  (Tr. 28–31.)

On June 25, 2019, the Court adopted a case management and scheduling order.  (Dkt. No. 24.)  On June 26, 2019, Defendant sought to file a motion to dismiss.  (Dkt. No. 25.)  Plaintiff opposed this request on July 12, 2019, (Dkt. No. 27), and the Court held a pre-motion conference on September 12, 2019, at which it set a briefing schedule, (Dkt. (minute entry for Sept. 12, 2019)).

On September 26, 2019, Defendant filed the instant Motion.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No 31); Lichtenberg Decl.)  On October 24, 2019, Plaintiff filed a Response.  (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 33).)  On October 31, 2019, Defendant filed a Reply.  (Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 34).)  On June 30, 2020, Plaintiff filed a letter informing the Court that the Judgment had been reversed and remitted for trial in state court.  (Dkt. No. 35.)  Defendant filed a response on July 6, 2020.  (Dkt. No. 36.)  The Court determined that further briefing on the issue would be useful, (Dkt. No. 37), and the Parties submitted a proposed briefing schedule on July 10, 2020, (Dkt. No. 38), which the Court approved, (Dkt. No. 39).  Pursuant to this schedule, Plaintiff filed a supplemental Memorandum on July 17, 2020.  (Pl.'s Suppl. Mem. of Law in Opp'n to Mot. ("Pl.'s Suppl. Mem.") (Dkt. No. 40).)  On July 31, 2020, Defendant filed a supplemental Response.  (Def.'s Suppl. Mem. of Law in Supp. of Mot. ("Def.'s Suppl. Mem.") (Dkt. No. 41).)  On August 7, 2020, Plaintiff filed a supplemental Reply.  (Pl.'s Suppl. Reply Mem. of Law in Opp'n to Mot. ("Pl.'s Suppl. Reply Mem.") (Dkt. No. 42).)

## II.  Discussion

### A.  Standards of Review

"The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical." *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation marks omitted).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)).  This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (citation omitted).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d

Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en

banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l*

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*,

561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)

(describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)

(quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a

motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may

consider matters outside the pleadings." *JTE Enters. v. Cuomo*, 2 F. Supp. 3d 333, 338

(E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

In its original Motion papers, Defendant argued that the Complaint should be dismissed under the law of the case doctrine, that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, and that Plaintiff's claims are barred by res judicata. (*See generally* Def.'s Mem.) In the supplemental briefing ordered by the Court, Defendant argues that the Complaint should be dismissed under *Younger v. Harris*, 401 U.S. 37 (1971), as well as under the Anti-Injunction Act, 28 U.S.C. § 2283. (*See generally* Def.'s Suppl. Mem.)

1. *Rooker-Feldman* Doctrine and Res Judicata

Defendant initially contended that the Court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiff sought to "undo her state-court-ordered eviction," and that her claims were barred by res judicata. (Def.'s Mem. 5–12.) Because the Judgment has been reversed and remitted, Plaintiff now argues that *Rooker-Feldman* and res judicata are no longer applicable. (Pl.'s Suppl. Mem. 4–9.) Defendant does not respond specifically to these arguments, apparently conceding that these doctrines no longer apply. (*See generally* Def.'s Suppl. Mem.)[4]

_____

[4] Defendant also argued that the Court should dismiss the Complaint pursuant to the law of the case doctrine and the Court's findings at oral argument on Plaintiff's Motion for a Preliminary Injunction. (Def.'s Mem. 5.) Plaintiff argues that the reversal of the Judgment renders the law of the case doctrine inapplicable. (Pl.'s Suppl. Mem. 2–4.) The Court agrees that, to the extent the law of the case doctrine would be applicable here, it is proper for the Court to exercise its discretion and re-examine the applicability of *Rooker-Feldman* and res judicata, given the change in circumstances. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (highlighting that the law of the case doctrine is "discretionary," and "does not limit a court's power to reconsider its own decisions prior to final judgment" (citation and quotation marks omitted)). Moreover, the Court's findings at the preliminary injunction stage applied only to Plaintiff's request to preliminarily enjoin eviction proceedings, and not the remainder of Plaintiff's claims. (*See generally* Tr.) Those findings were further limited to determining Plaintiff's likelihood of success on the merits, and not whether Plaintiff had actually succeeded in stating a claim. (*See generally id.*) *See Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *6 (E.D.N.Y. Feb. 17, 2010) (instructing that the law of the case doctrine "only

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citation omitted) (per curiam).  However, the *Rooker-Feldman* doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Four requirements must be met before the *Rooker-Feldman* bar applies:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation, alterations and quotation marks omitted).

Citing to a decision from the Seventh Circuit, Plaintiff contends that because the Judgment has been overturned, she "is no longer a 'state court loser,'" is "not complaining of an injury caused by such a judgment[,] and does not invite or seek review of any such judgment." (Pl.'s Suppl. Mem. 4–6.)  Typically, "subject matter jurisdiction must be determined at the outset of a case." *Tope v. Equity Now, Inc.*, No. 16-CV-2067, 2017 WL 2985387, at *2 (D. Conn. July 13, 2017) (citing *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 329 (2d Cir. 2001) ("The existence of federal jurisdiction over a case initially filed in federal court ordinarily depends on the facts as they stood when the complaint was filed." (citation omitted)).  As this Court

---

forecloses consideration of issues that have already been decided" (citation and quotation marks omitted)), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010).

previously determined, at the time that Plaintiff filed her Complaint, the Judgment had been entered in state court, and there appeared to be no ongoing proceedings, circumstances which would render *Rooker-Feldman* applicable.  (*See* Tr. 26–28.)  *See also Tope*, 2017 WL 2985387, at *2 & n.1 (determining that, because at the time that the complaint was filed, there was a final state court judgment, *Rooker-Feldman* applied, even in the face of "subsequent motions to reopen and new judgments entered"; also noting, however, that there had been "no . . . substantive modification to the initial foreclosure judgment"); *Leftridge v. Support Enforcement Servs.*, No. 12-CV-150, 2013 WL 1947174, at *2 (D. Conn. May 3, 2013) (holding that *Rooker-Feldman* applied to the plaintiff's complaint, even though the relevant state court judgment had been reversed, because at the time the complaint was filed, "the plaintiff was a state court loser," and the plaintiff's alleged injuries "were caused by the state court orders" (footnote omitted)).

However, although there is sparse analogous case law, some district courts in the Second Circuit have found that *Rooker-Feldman* is inapplicable when a state court judgment has been overturned or voided, and the complaints at issue in those actions were either filed, or amended, after that state court decision.  *See, e.g., Nara v. Palisades Acquisition XVI, LLC*, No. 14-CV-4687, 2015 WL 4064572, at *5 (E.D.N.Y. May 11, 2015) (declining to apply the *Rooker-Feldman* doctrine when "both [the] [p]laintiff's complaint . . . and the proposed amended complaint[] allege that the . . . state court judgment that once existed against [the] [p]laintiff has since been vacated by the state court"); *Bodkin v. Garfinkle*, 412 F. Supp. 2d 205, 211 (E.D.N.Y. 2006) (determining that the plaintiff was not a "state-court loser" when he had "prevailed in the state court proceedings" after an unfavorable state court decision was reversed and remitted, and the state trial court ultimately found in his favor); *see also Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) (as cited by Plaintiff, explaining that the respondent was "no

longer a state-court loser" when the "state judiciary itself vacated its [earlier] decision," thus

"restor[ing] the parties to the position they occupied before" one of the petitioners had filed suit);

*cf. Session v. Rodriguez*, 370 F. App'x 189, 191–92 (2d Cir. 2010) (finding that the district court

erred in applying *Rooker-Feldman* to a state court probable cause determination because it had

been, inter alia, "effectively reversed" in light of the dismissal of criminal charges against the

plaintiff (citation and quotation marks omitted)).  Similar reasoning has applied in cases related

to family court actions, where temporary or interlocutory state court orders have been

subsequently undone.  *See, e.g., Green*, 585 F.3d at 102 (finding that *Rooker-Feldman* did not

apply when the family court issued an order for temporary removal of the plaintiff's child from

her custody but later issued a superseding order returning the child because, inter alia, "[t]he only

conceivable 'judgment' against [the] plaintiff . . . ha[d] already been undone"); *S.W. ex rel.*

*Marquis-Adams v. City of New York*, 46 F. Supp. 3d 176, 203 (E.D.N.Y. 2014) (determining that

the plaintiffs were not "state court losers" in adoption proceedings, because a state court had

declared at least some of the adoptions to be "void *ab initio*," thus "convert[ing] [the plaintiffs]

to 'state court winners'" (citation and record citation omitted)).  Moreover, cases finding that

state court judgments on appeal are final for the purposes of *Rooker-Feldman* have related to

appeals that are undecided and pending.  *See, e.g.*, *Davis v. Baldwin*, No. 12-CV-6422, 2013 WL

6877560, at *4–5 (S.D.N.Y. Dec. 31, 2013) (finding that, when the plaintiff's appeals were

pending before the Appellate Division, the plaintiff's claims challenging the family court order at

issue was prohibited under *Rooker-Feldman*), *aff'd*, 594 F. App'x 49 (2d Cir. 2015); *Lominicki v.*

*Cardinal*, No. 04-CV-4548, 2007 WL 2176059, at *6 n.11 (S.D.N.Y. July 26, 2007) (same).[5]

---

[5] In her initial and supplemental memoranda, Plaintiff implores the Court to find that *Rooker-Feldman* should not apply when an appeal of a state court judgment is pending.  (Pl.'s Mem. 18 n.5; Pl.'s Suppl. Mem. 6 n.1.)  Further discussion of this issue is unnecessary, but the

Here, unlike in *Nara* and *Bodkin*, Plaintiff's Complaint was filed before the Judgment was reversed, and thus does not mention this development.  (*See generally* Compl.)  Instead, according to Plaintiff's Complaint, a final judgment was issued by a state court that ordered Plaintiff's eviction from her residence, and, among other forms of relief, Plaintiff sought to have that eviction enjoined.  (*See id.* ¶ 18; *id.* at 5.)  Therefore, under the operative pleading, *Rooker-Feldman* appears to apply.  (*See* Tr. 26 ("[W]hen state-court losers bring . . . [disability and discrimination] claims [seeking to enjoin evictions] in federal court, they have been consistently barred under the *Rooker-Feldman* doctrine . . . .").)

However, given the reversal of the original Judgment, a final state court judgment has not yet been issued, *see Exxon Mobil*, 544 U.S. at 292–93, and state court proceedings appear to be "ongoing" and "in parallel" with this Action, *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  Thus, the Parties have seemingly been "restore[d] . . . to the position they occupied before" the Judgment was rendered, *Bergquist*, 592 F.3d at 818, and "[t]he only conceivable 'judgment' against [the] plaintiff . . . has already been undone," *Green*, 585 F.3d at 102.  As such, and given that Defendant has failed to address the continued applicability of this doctrine, the Court finds that it is proper to allow Plaintiff to amend her Complaint to cure any defect on the basis of *Rooker-Feldman*.  *See Cannon v. N.Y. State Comm'r of Soc. Servs.*, No. 19-CV-6493, 2019 WL 3743975, at *2 (S.D.N.Y. Aug. 7, 2019) (stating that when the "*Rooker-Feldman* doctrine bars [a] [c]ourt from hearing . . . a challenge, the [c]ourt must dismiss it

---

Court does highlight that "the Second Circuit has repeatedly treated federal plaintiffs as state-court losers despite the persistence of proceedings or appeals following a dispositive state-court judgment."  *Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736, 2016 WL 3566234, at *5 (S.D.N.Y. June 24, 2016) (citing *Vossbrink v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 & n.1 (2d Cir. 2014) (per curiam); *Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005)).

without prejudice" (citing *Remy v. N.Y. State Dep't of Tax. & Fin.*, 507 F. App'x 16, 18–19 (2d

Cir. 2013); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)); *see also*

*Berene v. Nationstar Mortgage LLC*, 686 F. App'x 714, 716–17 (11th Cir. 2017) (finding that

the appellants were not state-court losers when they filed an amended complaint, because

although a foreclosure judgment had been entered when the original complaint was filed, that

decision was subsequently vacated in state court, and the amended complaint specified as

much).[6]

### 2. *Younger* Abstention

In its supplemental memorandum, Defendant argues that under *Younger*, the Court

should abstain from adjudicating this Action, given that state court proceedings are now pending.

(Def.'s Suppl. Mem. 4–10.)  Plaintiff disagrees, arguing that the three "exceptional

circumstances" to which *Younger* applies are not present here, and that, even if they are, the "bad

faith" exception to *Younger* is applicable.  (Pl.'s Suppl. Reply Mem. 3–11.)  Plaintiff further

argues that even if *Younger* abstention is warranted, it does not bar her claim for damages.  (*Id.*

at 9–11.)[7]

---

[6] Plaintiff also argues that res judicata is no longer applicable, which Defendant also does
not address in its supplemental memorandum.  (Pl.'s Suppl. Mem. 7–9; *see generally* Def.'s
Suppl. Mem.)  It is well-established that "[a] judgment vacated or set aside has no preclusive
effect."  *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992) (citations omitted); *see also Yan
Ping Xu v. City of New York*, 612 F. App'x 22, 26–27 (2d Cir. 2015) (vacating in part a district
court's application of res judicata when the state court judgment at issue was subsequently
reversed); *Da Silva v. Musso*, 559 N.E.2d 1268, 1269 (N.Y. 1990) ("It is elementary that a final
judgment or order represents a valid and conclusive adjudication of the parties' substantive
rights, *unless and until it is overturned on appeal*." (emphasis added)).  Thus, because the
Judgment has been reversed, the Court agrees that res judicata is not applicable.

[7] Plaintiff additionally contends that Defendant has waived any arguments related to
*Younger* because it failed to address the doctrine in its initial memorandum.  (Pl.'s Suppl. Reply
Mem. 2–3.)  The Court declines to find as much.  First, there was likely little reason to consider
the application of *Younger* when Defendant first brought the Motion, given that at that point,
Defendant was arguing that Plaintiff's eviction had been ordered by a state court.  (*See* Def.'s

*Younger* abstention provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The Court is mindful that "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)), and that "*Younger* abstention is a 'prudential limitation' grounded in considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution," *Sullivan v. N.Y. State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)). The Supreme Court has "clarified that district courts should abstain from exercising jurisdiction only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). "[T]hese three 'exceptional categories' . . . define *Younger*'s scope." *Sprint Cmmc'ns*, 571 U.S. at 78; *see also Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (confirming that *Sprint* clarified the three

---

Mem. 6 (stating that Plaintiff was "seeking to undo her state-court-ordered eviction").) Second, the Court did not set any limitations on the supplemental briefing, (*see* Dkt. No. 37 (stating that "[f]urther briefing sounds like a good idea")), and Plaintiff has had ample opportunity to respond to Defendant's new arguments in her supplemental reply memorandum. *Cf. Nokaj v. N. E. Dental Mgmt., LLC*, No. 16-CV-3035, 2019 WL 634656, at *7 n.12 (S.D.N.Y. Feb. 14, 2019) (noting that a district court may disregard arguments raised for the first time in reply papers, presumably because the opposing party would not have had the opportunity to respond). Therefore, the Court considers the application of *Younger* herein.

"exceptional circumstances" in which courts should abstain under *Younger*).  However, there are

"additional factors appropriately considered by the federal court[s] before invoking *Younger*,"

including whether the ongoing state judicial proceeding "implicates important state interests[]

and . . . provides an adequate opportunity to raise federal challenges." *Sprint Cmmc'ns*, 571 U.S.

at 81 (citation, emphasis, alterations, and quotation marks omitted).

In arguing that *Younger* abstention applies, Defendant fails to examine the three

"exceptional categories" set forth in *Sprint*.  (*See* Def.'s Suppl. Mem. 5 (arguing that *Younger*

abstention is required when "'(1) there is a pending state proceeding, (2) that implicates an

important state interest, and (3) the state proceeding affords a federal plaintiff an adequate

opportunity for judicial review of his or her federal constitutional [or statutory] claims'" (quoting

*Spargo*, 351 F.3d at 74) (alteration in original)).)  However, as recognized by Plaintiff, (*see* Pl.'s

Suppl. Reply Mem. 3–5), in *Sprint*, the Supreme Court made clear that these three conditions are

"not dispositive," and are instead "*additional* factors appropriately considered by the federal

court before invoking *Younger*," 571 U.S. at 81 (emphasis in original).  The Court emphasized

that applying such conditions alone "would extend *Younger* to virtually all parallel state and

federal proceedings, at least where a party could identify a plausibly important state interest,"

which would be "irreconcilable with [the Court's] dominant instruction that, even in the presence

of parallel state proceedings, abstention from the exercise of federal jurisdiction is the

'exception, not the rule.'"  *Id.* (record citation omitted) (quoting *Haw. Hous. Auth. v. Midkiff*,

467 U.S. 229, 236 (1984)).  Thus, "the[] three 'exceptional' categories . . . define *Younger*'s

scope."  *Id.* at 78; *see also Neroni v. Becker*, 555 F. App'x 118, 119 (2d Cir. 2014) (vacating a

district court judgment that applied the three-part test, given that in *Sprint*, "the Supreme Court

rejected this three-part test in favor of a categorical approach" (citation omitted)); *Rehab.*

*Support Servs., Inc. v. City of Albany*, No. 14-CV-499, 2015 WL 4067066, at *7 (N.D.N.Y. July 2, 2015) ("Following *Sprint*, a federal court should not focus on the substance of the claims involved in the state and federal proceedings by asking whether they implicate an important state interest.  Rather, *Younger* abstention only applies if the case fits into one of the three enumerated categories." (citations, alterations, and quotation marks omitted)).

Given that the parallel state court proceeding is not a criminal prosecution, nor a civil enforcement proceeding, the Court must determine whether it is a "civil proceeding[] involving certain orders that are uniquely in furtherance of the state court['s] ability to perform [its] judicial functions," *Sprint Cmmc'ns*, 571 U.S. at 70 (citation and quotation marks omitted), such that *Younger* would apply.  In *Sprint*, the Supreme Court cited two examples of such proceedings—one in which the Court abstained under *Younger* in "a case in which the State's contempt process [wa]s involved," as "[t]he contempt power lies at the core of the administration of a State's judicial system," *Juidice v. Vail*, 430 U.S. 327, 335 (1977), and another in which the Court determined that a district court's grant of an injunction related to the enforcement of a state court judgment and the state's appeal bond provisions was an impermissible "challenge[] to [one of] the processes by which the State compels compliance with the judgments of its courts," *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14 (1987) (footnote omitted).

A number of district courts within the Second Circuit have determined that "[a] routine non-payment action filed by a private landlord in state housing court neither implicates 'state courts' ability to perform their judicial functions,' nor enjoys significance equivalent to that of a state criminal or civil enforcement proceeding."  *Aponte v. Diego Beekman M.H.A. HDFC*, No. 16-CV-8479, 2019 WL 316003, at *5 (S.D.N.Y. Jan. 24, 2019) (some citations omitted) (quoting *Sprint Commc'ns*, 571 U.S. at 73); *see also Greer v. Meheil*, No. 15-CV-6119, 2016 WL 828128,

at *7 n.6 (S.D.N.Y. Feb. 24, 2016) (finding that a pending eviction action in state court does not

fit into the three categories defined in *Sprint*); *Andujar v. Hewitt*, No. 02-CV-2223, 2002 WL

1792065, at *7 (S.D.N.Y. Aug. 2, 2002) (finding that a "landlord-tenant dispute" is "a type of

litigation distinguished only by its ubiquity," and that a "summary holdover proceeding cannot

be said to concern the central sovereign functions of state government" (citation and quotation

marks omitted)); *Brooklyn Inst. of Arts and Scis. v. City of New York*, 64 F. Supp. 2d 184, 194

(E.D.N.Y. 1999) ("An ejectment action is neither a 'civil enforcement proceeding' nor one

'uniquely in furtherance of the state courts' ability to perform their judicial functions.'  It is a

landlord-tenant action that is routinely available in disputes between private parties." (quoting

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)).[8]

Given this precedent, and that Defendant does not even address whether the third prong of *Sprint*

applies, (*see generally* Def.'s Suppl. Mem.), *Younger* abstention is inappropriate here.[9]

---

[8] Some courts outside of the Second Circuit have also determined that routine eviction proceedings do not fall under the third prong of *Sprint*.  *See, e.g.*, *William Penn Apartments v. District of Columbia Court of Appeals*, 39 F. Supp. 3d 11, 20 (D.D.C. 2014) (finding that "[a]lthough the ongoing judicial proceedings involve[d] the [city's] interest in maintaining and administering landlord-tenant relations, this interest, by itself, does not justify *Younger* abstention," particularly when the defendants failed to demonstrate that the city "had any special interest in the eviction proceedings" at issue and when the ongoing eviction proceeding between two private parties was "garden variety civil litigation"); *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013) (finding that the "regulation of eviction proceedings does not implicate an important state interest under *Younger*," and that the "logic that the state has a significant concern simply because property law, including eviction, has long been a state concern . . . would require federal courts to abstain from state litigation in virtually every area of state law . . . even where the dispute is purely private"); *Ayers v. Phila. Hous. Auth.*, 908 F.2d 1184, 1195 n.21 (3d Cir. 1990) (holding that an eviction action brought by the city housing authority did not implicate an important state interest).

[9] The Court recognizes that some district courts have found to the contrary, determining that "the third *Sprint* prong applies" when "[p]laintiffs seek injunctive relief relating to the same property that is the subject matter of [an] underlying state court action."  *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-CV-4210, 2015 WL 5884797, at *2, 4 (S.D.N.Y. Oct. 8, 2015) (abstaining under *Younger* in a case where the underlying state court proceeding was brought by a "debtor in possession of a collateral in the [s]tate court").  Defendant cites many of these cases

3.  Anti-Injunction Act

Defendant also argues that the Complaint should be dismissed under the Anti-Injunction

Act.  (Def.'s Suppl. Mem. 10–13.)  Plaintiff contends that the Anti-Injunction Act does not apply

because she is not seeking to stay state court proceedings, and instead is seeking "a judgment

awarding compensatory and punitive damages, costs and attorneys['] fees[,] and enjoining

[Defendant] to renew her lease upon standard terms and to refrain from further discriminating

her on account of her disability."  (Pl.'s Suppl. Reply Mem. 12.)  Plaintiff argues that to the

extent she "seeks to permanently enjoin [Defendant] from evicting her," this demand "does not

warrant dismissal of her claims right now."  (*Id.*)  Finally, Plaintiff argues that if this Court were

to issue a judgment in her favor, one of the Anti-Injunction Act's exceptions would apply.  (*Id.*)[10]

"The Anti-Injunction Act provides that '[a] [c]ourt of the United States may not grant an

injunction to stay proceedings in a State court except as expressly authorized by [a]ct of

---

in support of its argument that *Younger* abstention is proper.  (Def.'s Suppl. Mem. 5–6.)
However, the Court finds that these cases are either distinguishable from this Action or were
decided before the Supreme Court's decision in *Sprint*.  *See Ochei v. Lapes*, No. 19-CV-3700,
2020 WL 528705, at *2–4 (S.D.N.Y. Jan. 31, 2020) (dismissing the complaint on the merits, but
also indicating that *Younger* would apply to an action brought under the FHA seeking to enjoin
state-court eviction proceedings because, inter alia, the plaintiff failed to "suggest that there are
grounds under . . . the *Younger* abstention doctrine to justify th[e] [c]ourt's interference in her
ongoing state-court eviction proceeding"); *Clark v. Bloomberg*, No. 10-CV-1263, 2010 WL
1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (determining, prior to the Supreme Court's clarification
in *Sprint*, that *Younger* abstention barred claims to enjoin a foreclosure action and eviction
proceedings because an "important state interest" was involved); *Haynie v. N.Y.C. Hous. Auth.*,
No. 14-CV-5633, 2015 WL 502229, at *2 (E.D.N.Y. Feb. 4, 2015) (same); *O'Neill v.
Hernandez*, No. 08-CV-1689, 2008 WL 2963634, at *1 (S.D.N.Y. Aug. 1, 2008) (same);
*Galland v. Margules*, No. 05-CV-5639, 2005 WL 1981568, at *3 (S.D.N.Y. Aug. 17, 2005)
(same), *aff'd*, 191 F. App'x 23 (2d Cir. 2006) .

[10] Plaintiff also suggests that because Defendant did not address the Anti-Injunction Act
in its original Motion, "the Court should refuse to entertain it now."  (Pl.'s Suppl. Reply Mem.
11.)  The Court disagrees and will consider the applicability of the Anti-Injunction Act for the
same reasons as it considered the applicability of *Younger*.  *See supra* Section II.B.2 n.7.

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment.'"

*Kristopher v. Stone St. Props., LLC*, No. 13-CV-566, 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29,

2013) (alterations in original) (quoting 28 U.S.C. § 2283). "This Act presents an absolute ban on

enjoining any state court proceeding, unless the facts of the case bring the matter within one of

the three narrowly constrained exceptions." *Id.* (citation and quotation marks omitted).

 "Courts in th[e] [Second] Circuit have long held that the Anti-Injunction Act applies to

state-court eviction proceedings." *Ochei*, 2020 WL 528705, at *4 (collecting cases); *see also*

*O'Neill v. Hernandez*, No. 08-CV-1689, 2008 WL 2662981, at *4 (S.D.N.Y. June 24, 2008)

("[T]he Anti-Injunction Act bars this [c]ourt from enjoining legal proceedings in housing court

and administrative proceedings against [the] [p]laintiff."); *Sierra v. City of New York*, 528 F.

Supp. 2d 465, 469 (S.D.N.Y. 2008) (holding that "the Anti-Injunction Act . . . bars [the]

plaintiff's application for injunctive relief to stay the Housing Court eviction proceedings and to

prohibit [the] defendant . . . from prosecuting the eviction" (citation omitted)). Further, none of

the exceptions to the Anti-Injunction Act applies here. District courts have squarely rejected any

argument that the first exception applies to claims brought under the FHA. *See Krisopher*, 2013

WL 499752, at *3 ("Since the [FHA] is expressly enforceable in both state and federal courts, no

stay of a state action is required to secure its intended scope." (quotation marks omitted) (citing

42 U.S.C. § 3613(a)(1)(A) (collecting cases)). Moreover, a number of courts, including this one,

have applied the Anti-Injunction Act not only when immediate injunctive relief is sought, but

also when the operative pleading seeks injunctive relief. *See Ochei*, 2020 WL 528705, at *3–4

(determining that the Anti-Injunction Act applied to the injunctive relief sought by the plaintiff in

the operative complaint); *Hanspal v. Epstein*, No. 18-CV-3875, 2019 WL 4574478, at *7

(E.D.N.Y. Sept. 20, 2019) (finding that the court was barred under the Anti-Injunction Act from

enjoining the defendants from pursuing eviction proceedings, a form of relief sought in the complaint); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 584 n.9 (S.D.N.Y. 2010) (determining that the court was "without authority to enjoin [an ongoing state proceeding] or the enforcement of a TRO" issued by a state court, forms of relief included in the plaintiffs' complaint); *Sierra*, 528 F. Supp. 2d at 469 (finding that the Anti-Injunction Act barred injunctive relief of staying eviction proceedings and prohibiting the defendant from prosecuting the eviction, sought by the plaintiff in her complaint).  Thus, Plaintiff's argument that she does not seek to presently enjoin the eviction proceedings is unavailing.

Nor does the second exception, which permits an injunction "where necessary in aid of [the federal court's] jurisdiction," 28 U.S.C. § 2283, apply, as this exception "is triggered only if 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case,'" *Allen v. N.Y.C. Hous. Auth.*, No. 10-CV-168, 2010 WL 1644956, at *4 (S.D.N.Y. Apr. 20, 2010) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)).  Here, "Plaintiff may raise her claim that Defendant[] violated the [FHA] as an affirmative defense to the eviction proceeding," which Plaintiff does not appear to dispute.  *Kristopher*, 2013 WL 499752, at *4 (citing N.Y. Real Prop. Acts. § 743).  Further, a state court proceeding "would in no way impair this Court's flexibility and authority to resolve Plaintiff's . . . other claims against [Defendant] and, if warranted, to award [her] damages."  *Allen*, 2010 WL 1644956, at *4.

Finally, Plaintiff's argument that the third exception would apply to any future judgment issued by this Court fails because the third exception "only applies where an issue has been previously presented to and decided by the federal court."  *Kristopher*, 2013 WL 499752, at *4

(citation and quotation marks omitted).  Thus, "[b]ecause this litigation is in its nascent stages

and the Court has yet to issue any orders, [with the exception of its denial of a preliminary

injunction,] the third exception is inapplicable."  *Id.*; *see also Baumgarten v. County of Suffolk*,

No. 07-CV-539, 2007 WL 1490487, at *9 (E.D.N.Y. Feb. 20, 2007) (finding that the third

exception did not apply when no final judgment had been issued in the case), *adopted by* 2007

WL 1490482 (E.D.N.Y. May 15, 2007).

      Therefore, the Court is unable to "permanently enjoin [D]efendant from evicting

[P]laintiff."  (Compl. 5.)  It likewise cannot "order [D]efendant to renew [P]laintiff's lease on

standard terms," (*id.*), which, with state proceedings ongoing, would be "tantamount to

interfering with, and thus enjoining, the state-court eviction proceeding" were the state court

ultimately to issue an order allowing for Plaintiff's eviction, *Doe v. YWCA of Ne. N.Y.*, No. 19-

CV-456, 2019 WL 1790279, at *1 (N.D.N.Y. Apr. 24, 2019); *see also Ochei*, 2020 WL 528705,

at *3 ("State-court proceedings 'should normally be allowed to continue unimpaired by

intervention of the lower federal courts . . . .'" (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at

287)).  However, to the extent that Plaintiff seeks prospective relief, unrelated to the ongoing

proceedings, that would enjoin future "harassment against [P]laintiff on the basis of her

disability," (Compl. 5), this claim may survive.  *See Pathways, Inc. v. Dunne*, 329 F.3d 108, 114

(2d Cir. 2003) (finding that to the extent the plaintiff's claims for injunctive relief included a

"prospective component," that relief was not barred by the Anti-Injunction Act).  Additionally,

Plaintiff's claims for compensatory and punitive damages, as well as attorneys' fees and costs,

also survive.  *See Sierra*, 528 F. Supp. 2d at 469 ("Although the Anti-Injunction Act . . . bars

[the] plaintiff's application for injunctive relief to stay the Housing Court eviction proceedings

and to prohibit [the] defendant . . . from prosecuting the eviction, it in no way bars her claim

against [the defendant] for compensatory damages." (citing *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000)).

III.  Conclusion

For the reasons stated above, Defendant's Motion To Dismiss is granted in part and denied in part.  The portions of Plaintiff's Complaint seeking to enjoin the ongoing state court proceedings are dismissed without prejudice under the Anti-Injunction Act.  To the extent Plaintiff seeks to bring claims for monetary damages, or prospective injunctive relief unrelated to the state court proceedings, the Court grants Plaintiff leave to file an amended complaint that cures any defects on the basis of *Rooker-Feldman* within 30 days of this Opinion & Order. Failure to properly and timely amend may result in dismissal of this Action.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 30).

SO ORDERED.

DATED:      September 23, 2020
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23